**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEA AUGUSTIN, GERARD AUGUSTIN, | : | |
| THOMAS MCSORLEY, DONNA MCSORLEY | : | |
| RICHMOND WATERFRONT INDUSTRIAL | : | CIVIL ACTION |
| PARK, LLC | : | |
| | : | |
| Plaintiffs | : | NO. 14-CV-4238 |
| | : | |
| vs. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                    **November 30, 2016**

     This §1983 action is once again before this Court on Motion
of the Plaintiffs to certify this matter as a class action
pursuant to Fed. R. Civ. P. 23.  Specifically, Plaintiffs move to
certify a class of Philadelphia landlords whose properties have
been or will be liened by the Philadelphia Gas Works for unpaid
gas services incurred by delinquent tenants.  For the reasons
stated below, the motion shall be granted.

## History of the Case

     This action was commenced in July 2014 by two married
couples, Lea and Gerard Augustin and Thomas and Donna McSorley,
who own and lease residential real estate in the City of
Philadelphia and one commercial landlord, Richmond Waterfront
Industrial Park, LLC, all of whom suffered the imposition of gas

liens placed against their properties by the Philadelphia Gas
Works ("PGW") to recover for the unpaid gas accounts of their
tenants.  In bringing this lawsuit, Plaintiffs sought to
challenge the constitutionality of the methods and procedures by
which PGW liened their properties, arguing that the City's
procedures did not afford them either adequate notice or an
opportunity to be heard with respect to what they averred was a
taking of their property interests.  The parties were given some
nine months to take discovery following which they both filed
motions for summary judgment; Defendant's motion was denied but
Plaintiffs' motion for partial summary judgment was granted in
our Memorandum and Order entered on March 17, 2016.  In that
decision, we determined that PGW's procedures for liening
property was, based upon the evidence in the record then before
us, constitutionally inadequate in the case of non-customer
landlords because it constitutes an unlawful taking of property
without due process of law.  We directed that the parties submit
a proposed schedule for the filing of briefs and the conduct of
further proceedings regarding the fashioning of an appropriate
remedy.

Thereafter, Plaintiffs filed an Amended Motion for Interim
Injunctive Relief and a hearing was held on that amended motion
on May 3, 2016.  The following day, we issued an Order granting
that Motion and immediately preliminarily enjoining the City and

PGW "from filing any liens on real property to enforce unpaid charges for natural gas service, where such service, according to PGW's records, was provided to a residential or commercial customer other than the owner of the property targeted for the lien[,]" and "from collecting or attempting to collect any Covered Liens from the proceeds of any sale or refinancing transaction involving a property owned by a person other than the underlying customer of record".  Additional hearings on the instant motion for class certification and motion for permanent injunctive relief were held on July 26 and 27, 2016 and the matters are now ripe for determination.  We address only the motion for class certification in this Memorandum; the motion for permanent injunction shall be discussed in a separate opinion.

### Standards Governing Class Certification Motions

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348, 131 S. Ct. 2541, 2550, 180 L. Ed.2d 374, 388-389 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S. Ct. 2545, 61 L. Ed.2d 176 (1979)); Reyes v. Netdeposit, LLC, 802 F.3d 469, 482 (3d Cir. 2015).  "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury' as the class members."  Id.(quoting East Texas Motor Freight System,

3

Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed.2d
453 (1977)).  The class action vehicle is outlined in Fed. R.
Civ. P. 23, subsection (a) of which sets forth four threshold
requirements for certification and reads as follows:

> **(a) Prerequisites**.  One or more members of a class may sue
> or be sued as representative parties on behalf of all
> members only if:
>
> **(1)**  the class is so numerous that joinder of all members is
> impracticable;
>
> **(2)**  there are questions of law or fact common to the class;
>
> **(3)**  the claims or defenses of the representative parties
> are typical of the claims or defenses of the class; and
>
> **(4)**  the representative parties will fairly and adequately
> protect the interests of the class.

"The requirements set out in Rule 23 are not mere pleading
rules." Marcus v. BMW of North America, 687 F.3d 583, 591 (3d
Cir. 2012).  Indeed, "[t]he parties seeking class certification
bear the burden of establishing by a preponderance of the
evidence that the requirements of Rule 23(a) have been met." In
re NFL Concussion Injury Litigation, 821 F.3d 410, 426 (3d Cir.
2016)(quoting In re Community Bank of Northern Virginia Mortgage
Lending Practices Litigation, 795 F.3d 380, 391 (3d Cir. 2015)).
"Actual, not presumed, conformance with the Rule 23 requirements
is essential." In re Hydrogen Peroxide Antitrust Litigation, 552
F.3d 305, 326 (3d Cir. 2008).  In determining whether there is
actual conformance with Rule 23, a district court must conduct a
rigorous analysis of the evidence and arguments advanced and must

4

resolve all factual or legal disputes relevant to class
certification, even if they overlap with the merits; this
includes disputes touching on elements of the cause of action.
Marcus, supra.; Hydrogen Peroxide, 552 F.3d at 307, 316.  Once
the prerequisites of Rule 23(a) are found to have been satisfied,
the courts next consider whether the class meets the requirements
of one of three categories of class actions in Rule 23(b).  NFL
Concussion Litigation, supra.

Under Rule 23(b),

A class action may be maintained if Rule 23(a) is satisfied
and if:

**(1)** prosecuting separate actions by or against individual
class members would create a risk of:

   **(A)** inconsistent or varying adjudications with respect
   to individual class members that would establish
   incompatible standards of conduct for the party
   opposing the class; or

   **(B)** adjudications with respect to individual class
   members that, as a practical matter, would be
   dispositive of the interests of the other members not
   parties to the individual adjudications or would
   substantially impair or impede their ability to protect
   their interests;

**(2)** the party opposing the class has acted or refused to act
on grounds that apply generally to the class, so that final
injunctive relief or corresponding declaratory relief is
appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common
to class members predominate over any questions affecting
only individual members, and that a class action is superior
to other available methods for fairly and efficiently
adjudicating the controversy.  The matters pertinent to
these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

1. *Rule 23(a) Requirements*

Turning to the requirements of Rule 23(a), we consider first the directive that the class be "so numerous that joinder of all members is impracticable." It has been said that "impracticable does not mean impossible," and that this requirement refers rather to the difficulties of achieving joinder. In re Modafinil Antitrust Litigation, No. 15-3475, 2016 U.S. App. LEXIS 16723 at *22 (3d Cir. Sept. 13, 2016). "This calls for an inherently fact-based analysis that requires a district court judge to 'take into account the context of the particular case,' thereby providing district courts considerable discretion in making numerosity determinations." Id.(quoting Pennsylvania Public School Employees' Retirement System v. Morgan Stanley & Co., 772 F.3d 111, 120 (3d Cir. 2014)). A district court will be considered to have abused that discretion when it considers issues that have no place in the numerosity requirement. Id; Hydrogen Peroxide, 552 F.3d at 312.

6

Further, although there is no "magic number" of class members needed to proceed as a class action, numerosity is generally found to be satisfied if there are more than 40 members of the class.  <u>NFL Concussion Litigation</u>, <u>supra</u>,(citing <u>Marcus</u>, 687 F.3d at 595 and <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-227 (3d Cir. 2001)).  While it appears that the Defendant here does not contest numerosity or adequacy of representation, we find that even if it did, this 23(a)(1) requirement is ably satisfied.  As noted in the Stipulation of Facts filed by defense counsel shortly before the hearing on the class certification and permanent injunction motions in this matter, "[f]or the time period 2009 through December 31, 2015, there were a total of 78,985 mismatch liens filed against properties where the property owner was not the PGW customer of record," totaling $70,991,140. (Doc. No. 93, ¶85).  While we believe it is safe to assume that a number of these liens may be against the same properties owned by the same individuals, it is clear that the class proposed here is well in excess of 40 and that the joinder of all members would indeed be impracticable.  Accordingly, the numerosity requirement is met.

Rule 23(a) also requires that the members of a proposed class share a common question of law or fact.  "A putative class satisfies Rule 23(a)'s commonality requirement 'if the named plaintiffs share at least one question of fact or law with the

grievances of the prospective class.'" Rodriguez v. National City Bank, 726 F.3d 372, 382 (3d Cir. 2013)(quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)).  Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, though it does not require that they have all suffered a violation of the same provision of law.  Wal-Mart v. Dukes, 564 U.S. at 350, 131 S. Ct. at 2551.  The focus of the commonality inquiry is not on the strength of each plaintiff's claim but instead is on whether the defendant's conduct was common as to all of the class members.  Rodriguez, supra.  Thus, commonality has been found to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and when some members claims were arguably not even viable.  NFL Concussion Litigation, 821 F.3d at 427.  "In other words, there may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant." Rodriguez, 726 F.3d at 383 (citing Baby Neal, 43 F.3d at 56). In accord, Reyes, 802 F.3d at 486.

In application of these principles to this case, it is apparent that all of the potential class members here suffered and/or have the potential to suffer the same injury at the hands of the Defendant: having a lien or liens placed against their property to recover for unpaid gas services provided to their

tenants without having first received notice and an opportunity to be heard that comports with the due process clause of the United States Constitution.  Hence we find that there is unquestionably a common question of fact and law between all of the members of the proposed class and that the commonality component has likewise been met.

We next consider "typicality" or the mandate that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  "The typicality inquiry assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interest will be fairly represented."  Danvers Motor Co. v. Ford Motor Co., 543 F.3d 141, 149-150 (3d Cir. 2008)(quoting Georgine v. Amchem Prods., Inc., 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom,* Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).  "Factual differences will not defeat typicality *if* the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory."  Id, at 150 (citing Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006)).  It has been said that "the commonality and typicality requirements of Rule 23(a) tend to merge," insofar as "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and

whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Wal-Mart v. Dukes, 564 U.S. at 350, n.5, 131 S. Ct. at 2551, n.4 (quoting General Telephone Co. Of Southwest v. Falcon, 457 U.S. 147, 157-158, n.13, 102 S. Ct. 2364, 72 L. Ed.2d 740 (1982)).  "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." NFL Concussion Litigation, 821 F.3d at 428 (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 311 (3d Cir. 1998)).

Again, in this action, the legal theories *and* the claims of the proposed class members are essentially identical to those of the named plaintiffs.  Indeed, the proposed class members, like the named plaintiffs, are all residential and/or commercial landlords in the City of Philadelphia whose tenants requested and received natural gas and gas services from PGW without paying for those services and whose properties were liened by PGW for those unpaid services through a process which did not provide constitutionally adequate notice.  The requirement of typicality is therefore fulfilled in this case.

The final requirement which must be satisfied under Rule 23(a) is that of adequacy of representation.  That is, Rule

10

23(a)(4) requires class representatives to fairly and adequately protect the interests of the class.  Adequacy depends on the class representative having the ability and incentive to protect class wide interests, as well as having obtained able and experienced counsel.  <u>Hassine v. Jeffes</u>, 846 F.2d 169, 179 (3d Cir. 1988); <u>Yaeger v. Subaru of America, Inc.</u>, No. 14-CV-4490, 2016 U.S. Dist. LEXIS 117193 at *18 (D. N.J. Aug. 31, 2016).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  <u>Larson v. AT & T Mobility LLC</u>, 687 F.3d 109, 131-132 (3d Cir. 2012)(quoting <u>Amchem Products v. Windsor</u>, 521 U.S. at 625, 117 S. Ct. 2231)).  The inquiry has two purposes: to determine (1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously and (2) that there is no conflict between the individual's claims and those asserted on behalf of the class.  <u>Id</u>.(citing <u>Drennan v. PNC Bank, NA</u>, 622 F.3d 275, 291 (3d Cir. 2010)).  And, given that class members with divergent or conflicting interests from the named plaintiffs and class counsel cannot be adequately represented, this inquiry is also vital.  <u>Id</u>.  <u>See also</u>, <u>In re Diet Drugs Prods. Liab. Litig.</u>, 385 F.3d 386, 395 (3d Cir. 2004)(same).

Here, Defendant does not seem to be contesting that Plaintiffs and their counsel will adequately represent the

interests of the proposed class but even if it was, we do not
discern any significant or fundamental conflicts between the
named plaintiffs and the class members as it appears that their
interests are, for the most part, aligned.  Similarly, the Court
finds that the named plaintiffs' lawyers have done a good job
overall with respect to the initiation, conduct of discovery,
motions practice and overall handling of this litigation such
that we would readily conclude that they have the necessary
experience and expertise and are competent to represent the
interests of the class.  So saying, we find that the adequacy of
representation element has also been satisfied as have all four
of the pre-requisites of Rule 23(a).

   *2.  Rule 23(b) Requirements*

   Plaintiffs move to certify this matter as a class action
under Rule 23(b)(2), on the grounds that "the party opposing the
class has acted or refused to act on grounds that apply generally
to the class, so that final injunctive relief or corresponding
declaratory relief is appropriate respecting the class as a
whole."  Fed. R. Civ. P. 23(b)(2).  The Third Circuit has opined
that this requirement is almost automatically satisfied in
actions primarily seeking injunctive relief.  Baby Neal for and
by Kanter v. Casey, 43 F.3d 48, 58 (3d Cir. 1994)(citing Weiss v.
York Hospital, 745 F.2d 786, 811 (3d Cir. 1984), *cert. denied*,
470 U.S. 1060, 105 S. Ct. 1777, 84 L. Ed.2d 836 (1985)).

Further, "[i]t is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment," and, "[i]n fact, the injunctive class provision was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons."  Id, at 58-59.

The Supreme Court has also explained certification under Rule 23(b)(2):

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted - the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." ...(citation omitted) In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

Wal-Mart v. Dukes, 564 U.S. at 360-361, 131 S. Ct. at 2557. Hence, because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action. Shelton v. Bledsoe, 775 F.3d 554, 561 (3d Cir. 2015).

In this case as we noted in our March 17, 2016 Memorandum, the gravamen of the Plaintiffs' complaint is that the methods

used by the Defendant City gas works to place liens against
Plaintiffs' properties unconstitutionally denies their rights to
due process of law.  It is clear from the record in this matter
that this methodology is used and/or has the potential to be used
not just against the named Plaintiffs but against *all* of those
commercial and residential landlords in the City of Philadelphia
whose tenants have failed to pay their gas bills in excess of
$300 and/or who are more than 90 days in arrears.  By their
complaint and with the exception of class certification,
Plaintiffs seek the following relief:

> 2.   declaratory and injunctive relief, declaring the City
>      of Philadelphia's policies, practices and procedures
>      regarding the liening of properties for the nonpayment
>      of tenant gas accounts to be in violation of the
>      Constitutional requirement of Procedural Due Process,
>      enjoining such policies, practices and procedures, and
>      requiring the City to release all such existing liens;
>
> 3.   an award of attorney's fees, expenses and costs,
>      pursuant to 42 U.S.C. §1988;
>
> 4.   such other relief deemed by the Court to [be] necessary
>      or appropriate.

(Plaintiffs' Class Action Complaint, filed 7/14/14, at p. 25).

It thus appears that the primary relief which Plaintiffs
seek in this case is indeed the issuance of *one* injunction and/or
declaration applicable to *all* of the members of the class (now
known or unknown), and that any monetary compensation which may
flow therefrom would be merely incidental.  From this, we readily
conclude that the case now before us is clearly the type of

14

institutional reform/civil rights action for which Rule 23(b)(2) was uniquely designed. That it was necessary to impose a preliminary injunction upon PGW to compel it to cease and desist from placing further liens pursuant to its lien management system further evinces that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole." We therefore find that this matter is properly certified as a class action under Rule 23(b)(2).

### 3. *Ascertainability*

As an aside, we note that Defendant has rather strenuously asserted that class action status must be denied here for the reason that membership of the plaintiffs' proposed class is not currently and readily ascertainable based on objective criteria, citing Marcus, 687 F.3d at 592. Although "[t]he word 'ascertainable' does not appear in the text of Rule 23," courts have generally recognized that, at least with respect to actions under Rule 23(b)(3), it is an "essential pre-requisite" or an implied requirement that the members of a class be identifiable at the moment of certification. Byrd v. Aaron's, Inc., 784 F.3d 154, 162 (3d Cir. 2015); Shelton, 775 F.3d at 559; Marcus, 687 F.3d at 593.

We acknowledge that the ascertainability requirement serves

15

several important objectives, the first of which is the elimination of those serious administrative burdens that are incongruous with the efficiencies expected in a class action. Carrera v. Bayer Corp., 727 F.3d 300, 305 (3d Cir. 2013)(quoting Marcus, 687 F.3d at 593). It does this by insisting on the easy identification of class members. Id. Second, it protects absent class members by facilitating the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action. Id. And third, it protects defendants by insuring that those persons who will be bound by the final judgment will be clearly identifiable. Id, at 306. However, largely because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought and because a remedy obtained by one class member will necessarily affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action and thus the Third Circuit has held that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief. Shelton, 775 F.3d at 561, 563. Insofar as that is precisely the situation with which we are here presented in the case at bar, we see no need to undertake an analysis of the ascertainability of the proposed class here and we therefore reject PGW's argument that class action status should be denied on this basis.

  *4.  Suitability of Named Plaintiffs to Represent the Class*

In addition to contesting that the Rule 23(a) and (b) factors have been satisfied and making the ascertainability argument, Defendant also disputes the suitability of the Augustins and the McSorleys to hold the roles of class representatives.[1]  Specifically, PGW argues that neither the Augustins nor the McSorleys can represent the class because they failed to bring their claims within the two-year statute of limitations and/or their claims have since been rendered moot by payment of the liens.

Generally speaking, the burden of proof on a statute of limitations defense where the conduct causing the injury occurred more than two years before the institution of suit, falls upon the defendant as the party asserting it.  See, Smith v. United States, 133 S. Ct. 714, 720 184 L. Ed.2d 570, 578 (2013)("the common law rule was that affirmative defenses were matters for the defendant to prove."; Owens v. Lac D'Amiante du Quebec, Ltee, 656 F. Supp. 981, 982 (E.D. Pa. 1987).  Once the statute of limitations defense has been raised, however, a corresponding obligation falls upon the Plaintiff to show that he filed his claims within the applicable statute of limitations or that there exists a valid reason or justification for his failure to do so, as for example where the discovery rule or the doctrine of equitable tolling is invoked.  See, e.g., Miller v. Janney

---

[1]  Defendant does not make this argument with respect to Plaintiff Richmond Waterfront Industrial Park.

Montgomery Scott, Inc., Civ. A. No. 96-8709, 1998 U.S. Dist.
LEXIS 9893 at *3 (E.D. Pa. June 24, 1998); Speicher v. Dalkon
Shield Claimants Trust, 943 F. Supp. 554, 557 (E.D. Pa. 1996).

Under the discovery rule, the limitations period is tolled
until such time as an aggrieved party knows or reasonably should
have known that he or she sustained an injury – which may or may
not necessarily be the same date on which the wrong that injures
the plaintiff occurs. G.L. v. Ligonier Valley School District
Authority, 802 F.3d 601, 613 (3d Cir. 2015)(citing William A.
Graham Co. v. Haughey, 646 F.3d 138, 150 (3d Cir. 2011)).
Equitable tolling is similar in that it functions to stop the
statute of limitations from running where the claim's accrual
date has already passed. Oshiver v. Levin, Fishbein, Sedran &
Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). It has been said that
while both the discovery rule and the equitable tolling doctrine
require diligence on the part of the plaintiff, the discovery
rule focuses on the plaintiff's knowledge of injury, whereas
equitable tolling focuses on the time to bring an action despite
discovery of the injury. MRL Development I, LLC v. Whitecap
Investment Corp., 823 F.3d 195, 205 (3d Cir. 2016).

"[T]here are three principal, though not exclusive,
situations in which equitable tolling may be appropriate: (1)
where the defendant has actively misled the plaintiff respecting
the plaintiff's cause of action; (2) where the plaintiff in some

18

extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver, supra,(citing School District of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981). "To demonstrate reasonable diligence, ... a plaintiff must 'establish that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" Cunningham v. M & T Bank Corp., 814 F.3d 156, 161 (3d Cir. 2016)(quoting Mest v. Cabot Corp., 449 F.3d 502, 511 (3d Cir. 2006)).

In this case, while it appears that several of the Augustins' claims may well be time-barred given that they received several lien notices in 2011[2] but did not file suit until July, 2014, we do not find that all of their claims are barred.  Indeed, the record in this matter reflects that Mr. and Mrs. Augustin received additional notices that liens had been placed against their rental property at 5105 Wayne Avenue in 2012, that Mrs. Augustin made several phone calls to PGW to obtain information about these liens and what to do about them

---

[2]    The record also contains copies of PGW notices which were sent in 2010 to the properties owned by the Augustins.  In 2011, it appears that the City began sending the lien notices to the Augustins' residence address in Elkins Park, PA, which is what was listed on their landlord license, at least with respect to their Wayne Avenue property.

19

and was advised to file a complaint with the Pennsylvania Public
Utility Commission ("PUC") to obtain relief.  Plaintiffs filed
both an informal and a formal complaint with the PUC in October,
2012 but on May 8, 2013, the PUC ruled that it had no
jurisdiction to determine the validity of liens pursuant to the
Pennsylvania Municipal Claim and Tax Lien Law[3] and it therefore
sustained PGW's preliminary objections to the complaint.
(Plaintiff's Summary Judgment Exhibits, No. 4, at pp. 129, No. 8;
Defendant's Trial Exhibits, No. 12; Defendant's Summary Judgment
Exhibits, "M," at p. 58).  Given that PGW filed preliminary
objections seeking dismissal of the very PUC complaint which it
urged Plaintiffs to file, we find it obvious that Defendant
actively misled the Augustins with respect to their claims and
that this action on Defendant's part operated to toll the running
of the statutory limitations period.  As the complaint in this
matter was filed within two years of the receipt of the PUC
decision dismissing their claim, we find Lea and Gerard Augustin
to be appropriate class representatives.

We reach the same result with respect to Donna and Thomas
McSorley.  Two liens were filed against their rental property at
1916 Griffith Street on March 29, 2012 and July 12, 2013.
(Plaintiffs' Summary Judgment Exhibits, No. 9).  With respect to
the first lien, there is no evidence that these plaintiffs were

---

[3]   53 P.S. §7101, *et. seq.*

directed to the PUC or were in any other manner excused from taking action within two years and it therefore appears that their individual claim based upon the March 2012 lien is barred by the statute of limitations.  With respect to the second lien filed in July 2013, we find that the claim premised upon this lien is viable and that insofar as this action was filed approximately one year later, the McSorleys are proper class representatives as well.[4]   For these reasons, we reject PGW's challenge to the suitability of the plaintiffs to represent the putative class and, in light of our previous findings that the requisite Rule 23(a) and (b)(2) requirements have been satisfied here, we shall grant the motion for class certification in accordance with the annexed Order.

---

[4]   Although Defendant's counsel argued at the July 26, 2016 hearing that the McSorleys satisfied this outstanding lien on September 20, 2014 before the class certification notice was filed such that this claim is moot, (N.T. 7/26/16, pp. 104-105), we have found no evidence in the record to substantiate this contention.  Moreover, even if we could find such evidence, the Third Circuit has recognized that special mootness rules apply in the class action context for determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class.  Richardson v. Director, Federal Bureau of Prisons, 829 F.3d 273, 278 (3d Cir. 2016)(citing Brown v. Philadelphia Housing Authority, 350 F.3d 338, 343 (3d Cir. 2003)).  If for example, a plaintiff can show that he is likely to suffer future injury from the defendant's conduct, i.e., that the conduct "is capable of repetition yet evading review," the case can still be heard in federal court even if the named plaintiff's claims have become moot during the litigation.  Id., at 278-279.  Since the McSorleys continue to own and rent the Griffith Street property to tenants, we find that the liening by the City pursuant to its present unconstitutional procedures is indeed potentially injurious conduct which is capable of repetition.  So saying, we reject PGW's mootness argument with respect to Mr. and Mrs. McSorley.